**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**MATTHEW T. MUTCHLER,**               :

     **Plaintiff**                        :
                      **CIVIL ACTION NO. 3:13-2235**
     **v.**                               :
                        **(Mannion, D.J.)**
**CAROLYN W. COLVIN,**                 :      **(Cohn, M.J.)**
**Acting Commissioner**
**of the Social Security**              :
**Administration,**
                   :
     **Defendant**
                   :

**M E M O R A N D U M**

Pending before the court is the report and recommendation of Judge

Cohn, (Doc. 20), recommending that plaintiff's appeal from the final decision

of the Commissioner of Social Security be denied and the decision of the

Commissioner be affirmed. Judge Cohn reviewed the record in this case

pursuant to 42 U.S.C. §405(g) to determine whether there is substantial

evidence to support the Commissioner's decision denying the plaintiff's claim

for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f.[1] The court has

jurisdiction over this appeal pursuant to 42 U.S.C. §1383(c)(3). Plaintiff filed

objections to the report as well as a brief in support of his objections. (Docs.

---

[1] The court notes that since Judge Cohn stated the full procedural history
and facts of this case, (Doc. 20, at 2-3, 5-21), and since plaintiff did not object
to them, the court will not repeat all of them in this memorandum.

21, 26).[2] Defendant did not object to the report but responded to plaintiff's objections. (Doc. 29). For the following reasons, the report and recommendation is **ADOPTED** and, the plaintiff's appeal is **DENIED**. The decision of the defendant Commissioner will be **AFFIRMED** and the case will be **CLOSED**.

## I.   STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review de novo those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing* United States v. Raddatz, 447 U.S. 667, 676 (1980)).

---

[2]Plaintiff's counsel intermittently misidentifies Magistrate Judge Cohn as a "Magistrate" when captioning his filings as "Objections To Magistrate's Report and Recommendation." (Doc. 21, Doc. 26). The title magistrate no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in **1990**. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Plaintiff's counsel is reminded to use the correct title, in the future, when referring to Judge Cohn or any other United States Magistrate Judge.

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing* Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988)*; Hartranft v. Apfel,* 181 F.3d 358, 360. (3d Cir. 1999)*, Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the ALJ's decision is supported by substantial evidence, the court is "bound by those findings." Fargnoli v.

3

Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

4

## II.   RELEVANT MEDICAL EVIDENCE

Judge Cohn's report and recommendation ("R&R") contains a thorough review of the plaintiff's medical history. (Doc. 20, at 5-18). The court will restrict its discussion below to the relevant medical background as it pertains to the plaintiff's objections.

Judge Cohn's report also details the five-step process that is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920. Since the five-step legal framework for addressing a disability claim was properly stated in the R&R, (Doc. 20, at 3-5), as well as the findings of the ALJ at each step, (Doc. 20, at 20-21), these portions of the R&R are incorporated by reference.

5

## III.  DISCUSSION

Plaintiff Matthew Mutchler protectively applied for SSI on May 14, 2010, alleging he was unable to work due to headaches caused by a truck accident in 2001. Plaintiff's application was denied on August 16, 2010, by the Bureau of Disability Determination. A hearing was held before an administrative law judge ("ALJ") on August 10, 2011. Plaintiff and a vocational expert ('VE") testified at the hearing. On December 1, 2011, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. The ALJ found that while plaintiff's post concussion syndrome and obesity were severe impairments that prevented him from doing his previous work as a truck driver, he maintained the residual functional capacity ("RFC") to do his past light work as an assembler. Specifically, the ALJ found that plaintiff could perform light work with no limitations in standing, walking or sitting, but with a few exertional limitations, namely, occasionally lifting and carrying 25 pounds and occasionally performing all postural activities. (TR 15).

The plaintiff raises objections to the R&R which this court consolidated. Plaintiff claims that errors were made by Judge Cohn regarding the following findings of the ALJ: (1) plaintiff could perform his past relevant work; (2) the weight afforded to the medical opinions (both treating and non-treating physicians); and (3) plaintiff did not meet or equal a listed impairment and testimony from a medical expert was not required.

6

The objections of the plaintiff will be addressed seriatim.

### A. ALJ's Finding that Plaintiff Could Perform His Past Relevant Work

At step four, the ALJ found that plaintiff could perform his past relevant work. (TR 18). The plaintiff objects to this finding and contends that no medical professional found he could perform his past work as a truck driver and as an assembler, and that his medical restrictions preclude him working as a truck driver. However, the ALJ did not find plaintiff could perform his past work as a truck driver. Rather, the ALJ, relying on the VE, found that plaintiff could only perform his past work as an assembly worker. (TR 18). Nonetheless, plaintiff states that the ALJ erred since she did not sufficiently identify what his past work as an assembler entailed and when he performed it.

Initially, insofar as plaintiff suggests that his work as an assembler likely occurred beyond the 15 year period to qualify as past relevant work, the record does not support his assertion. Plaintiff testified at the ALJ hearing that after the August 2001 truck accident, he performed light duty work in 2002 and 2003 as an assembler, and that his work involved "putting empty cases [of milk] on the line [i.e., conveyor belt track] to go into the process room...." Plaintiff also stated that he put processed milk in crates to go to the stores. (TR 53-55, 65-66). Also, the earning records of plaintiff show that in 2002 and

2003 he jointly made $50,290.71. (TR 162). As such, plaintiff's work as an assembler was within the relevant time period to qualify as past relevant work. *See* 20 C.F.R. §416.960(b)(1).

Plaintiff also maintains that the ALJ erred since she did not evaluate what was involved in his past work as an assembler in light of his limitations and since no medical professional indicated he could perform his past work. Plaintiff states that Judge Cohn erred since he accepted the ALJ's RFC finding and finding at step four without further discussion.

Substantial evidence supports the ALJ's finding that plaintiff had the RFC to do light work with the stated limitations and that he could perform his past work as an assembler. Residual functional capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Commissioner of Social Sec. Admin.*, 200 F.3d 112, 121 (3d Cir. 2000) (citations omitted). "In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work." Roth v. Colvin, 2014 WL 4415372, *2 n. 1 (W.D.Pa. Sept. 08, 2014) (citations omitted). The court in *Burnett* stated that the ALJ must consider all evidence before him in making a RFC determination. Burnett, 200 F.3d at 121. The *Burnett* Court further elaborated that, while the ALJ is permitted to weigh the credibility of the evidence, he is required to give some indication of the pertinent and significant probative evidence which he rejects, as well as the

8

reasons for discounting the evidence. *Id*. Thus, the ALJ must mention and refute some of the contradictory evidence before him. *Id.; see also* Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Garibay v. Comm. of Social Sec., 336 Fed.Appx. 152, 156 (3d Cir. 2009) ("In making an RFC determination, an ALJ must discuss both the evidence that supports his conclusion and the evidence that was rejected.") (citing *Burnett, supra;* Cotter v. Harris, 642 F2d 700, 705-07 (3d Cir. 1981)). The ALJ also must give the plaintiff's subjective complaints "serious consideration," Mason, 994 F.2d at 1067, and make specific findings of fact, including credibility, as to plaintiff's residual functional capacity. Burnett, 220 F.3d at 120.Thus, the ALJ's RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (citation omitted).

In SSI cases, the ALJ decides whether plaintiff's RFC allows him to perform his past work at step four. (Doc. 29, at 4) (citing to O'Connor v. Comm'r of Soc. Sec., 466 Fed.Appx. 96, 98 (3d Cir. 2012)). *See* Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations.") (citing 20 C.F.R. §404.1527(e)(1), 404.1546(c)). The court in *Chandler* also quoted Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011), and stated that "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of [RFC]." *Id.* Thus, a medical professional is not required to find that he can perform his

past work as plaintiff contends.

The ALJ's RFC finding also accounted for all of plaintiff's physical limitations. "The ALJ must consider all relevant evidence when determining an individual's [RFC] in step four." Fargnoli, 247 F.3d at 41 (citations omitted). This evidence includes medical records, observations found during medical exams, limitations of plaintiff stated by plaintiff and by others. *Id*. As Judge Cohn points out, the ALJ considered the relevant medical evidence and relied on the opinion of Dr. R. Craig Nielsen a consultative examiner in finding that plaintiff could perform light work. (TR 376-382). Dr. Nielsen found that plaintiff could occasionally lift up to 25 pounds, occasionally carry up to 25 pounds, and no limitations with respect to sitting, standing and walking in an eight-hour work day. He also found that plaintiff had no limitations in pushing and pulling, and could occasionally climb, balance, stoop, kneel and crouch and had no other physical limitations. (TR 381-382). Judge Cohn thoroughly discussed the medical evidence upon which the ALJ relied in making her RFC assessment. (Doc. 20, at 6-20). In particular, the ALJ considered the records of Dr. Hani Tuffaha, a neurological surgeon who treated plaintiff from 2003-2008, who consistently released plaintiff to sedentary/light work until May 2008. (TR 328-339). Further, the August 2008 RFC assessment of Dr. Sharon Wander was considered. She found that plaintiff could occasionally lift up to 50 pounds, frequently lift up to 25 pounds, and stand, walk, or sit for up to six hours in an eight-hour work day. She found that plaintiff had no limitations in

10

pushing or pulling, and could occasionally climb and balance, and frequently stoop, kneel, crouch, and crawl. Plaintiff also was found not to have any limitations regarding use of his hands, sight and communication. (TR 544-549). The August 2010 RFC assessment of Dr. Leo Potera, a state agency physician, was also considered. He found that plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and stand, walk, or sit for up to six hours in an eight-hour work day. He found that plaintiff had no limitations in pushing or pulling, and that plaintiff had no limitations regarding use of his hands, sight and communication. (TR 514-519). The plaintiff's testimony regarding his limitations was also considered. (TR 40-62). Based on the ALJ's RFC finding, the VE stated that plaintiff could perform his past light duty work as an assembler. (TR 67).

Thus, substantial evidence supports the ALJ's RFC finding and her finding at step four that plaintiff could perform his past light work as an assembler.

Plaintiff also contends that since the ALJ erred at step four and since he could not perform any of his past work, the Medical-Vocational Guidelines ("Grids") should have been utilized. As Judge Cohn explains, the Grids can be used as a framework by the ALJ at step five in analyzing whether the RFC of a claimant with exertional and non-exertional impairments permit him to perform jobs existing in significant numbers in the national economy. (Doc. 20, at 21) (citing Stouchko v. Comm'r of Soc. Sec. 2014 WL 888513, *9

[(M.D.Pa. Mar. 6, 2014)](#). However, in the instant case, the ALJ properly found plaintiff was not disabled at step four and, as discussed, this determination was supported by substantial evidence since plaintiff could perform his past light work as an assembler. As such, the Grids did not apply. *See* [20 C.F.R. §404.1560(b)(3)](#).

To the extent plaintiff states that the ALJ erred by considering the Grids even though she found that he could perform his past work as an assembler, the ALJ only proceeded to step five "[i]n the alternative." (TR 18). Since the court finds substantial evidence supports the ALJ's finding at step four, it need not address her alternative findings under step five.

The ALJ also properly addressed what plaintiff's past work as an assembler entailed considering his limitations. Specifically, the ALJ stated:

> The claimant has past relevant work as a delivery truck driver (a semi-skilled, medium exertional level work, DOT # 905.663-014) and an assembly worker (an unskilled, light exertional level work, DOT # 706.687-010). At the hearing, the vocational expert testified that the *Dictionary of Occupational Titles* classifies each of the claimant's past relevant work as requiring skills and exertional capacity as noted above. She further testified that an individual with the residual functional capacity set forth above would be able to perform the assembly work. In comparing the claimant's residual functional capacity with the demands of this work as noted in the *Dictionary of Occupational Title* (DOT #706.687-010) and as the claimant described during the hearing, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(TR 18).

12

## *B. ALJ's Reliance on Consultative Examiner over Plaintiff's Treating Physicians*

The plaintiff next contends that the ALJ erred by affording more weight to Dr. Nielsen's assessment than the findings of his treating physicians, Dr. Tuffaha and Dr. Stuart Olinsky. As the ALJ explained, (TR 16), the record showed that from November 2003 to May 2008, Dr. Tuffaha "essentially cleared the claimant for light exertional level work." The ALJ recognized that while Dr. Tuffaha changed his opinion on May 7, 2008, and simply stated that plaintiff was "disabled for substantial gainful employment", (TR 440), the doctor did not substantiate this conclusion and plaintiff's symptoms were essentially unchanged over the five years the doctor treated plaintiff. Also, the ultimate decision as to whether plaintiff was disabled is reserved for the Commissioner. *See* Chandler v. Comm'r of Soc. Sec., 667 F.3d at 361. Plaintiff then ceased treating with Dr. Tuffaha and began treating with Dr. Olinsky in July 2008. The ALJ states that even though Dr. Olinsky's neurological examination of plaintiff was largely unremarkable,

> he diagnosed the claimant with "probable intractable post concussive syndrome" and "probable intractable headache syndrome including superimposed iced pick headaches (form of migraine)/possible neuralgia" (Ex. B23F at 4). He then went on to conclude that the claimant could not even lift 3 pounds on a frequent basis (Ex. B23F at 8). The level of limitations Dr. Olinsky assigned to the claimant is not supported by Dr. Olinsky's own finding that the claimant did not demonstrate any unilateral neurological dysfunction during the evaluation (Ex. 23F at 4) or by treatment records from other physicians. Accordingly, Dr.

13

Olinsky's July 29, 2008 residual functional capacity received little weight.

(TR 16-17).

Also, as Judge Cohn states, "the ALJ assigned little weight to Dr. Olinsky's July 29, 2008 opinion because Dr. Olinsky did not have a pre-existing treating relationship with plaintiff." (Doc. 20, at 27) (citing 20 C.F.R. §404.1527(c)(2)(I)).

The ALJ also explained that plaintiff sought more aggressive treatment from 2009 through 2011, but the medical records did not show he was precluded from performing light work. (TR 17). For instance, the ALJ noted that "[a]n EEG study conducted on April 28, 2011 to evaluate [plaintiff's] headaches showed no abnormality (Ex. B27F at 10) [and] [a]n MRI of the brain conducted on August 26, 2010 similarly revealed no evidence of an acute intracranial abnormality (Ex. B28F at 20)." Further, the ALJ indicated that plaintiff "was found to have no limitation with regard to meeting his activities of daily living needs." (TR 17). Significantly, as the ALJ stated, plaintiff's physician Dr. Barbara Swartz recommended in April 2011 that plaintiff find employment, (TR 572), and plaintiff testified at his ALJ hearing that he applied for a truck driving job just before the hearing.

The ALJ gave greater weight to Dr. Nielsen's assessment that plaintiff could perform the requirements of light work, (TR 17), pointing out that Nielsen personally examined plaintiff. The ALJ's RFC finding adequately

14

accounted for the limitations identified by plaintiff's treating physicians as well as Dr. Nielsen's limitations that were supported by the medical evidence. As such, the ALJ accounted for all of the doctor's findings, both treating and consultative, in assessing plaintiff's RFC and adequately explained her rejection of medical evidence.

The regulations as well as courts require the ALJ "give good reasons for the amount of weight given to a treating physician's opinion." Fargnoli v. Massanari, 247 F.3d 34, 42-44 (3d Cir. 2001); *see also* 20 C.F.R. §404.1527(d)(2).

Thus, as the Court in Terwilliger v. Chater, 945 F.Supp. 836, 842-43 (E.D.Pa. 1996), stated:

> An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993) (internal quotation marks, citations and indication of alteration omitted). Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." *Id.* (citations omitted). An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see *Mason*, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see *Id.* at 1067. An ALJ may not, however, reject medical determinations by substituting his own medical

judgments. *See Frankenfield,* 861 F.2d at 408.

Substantial evidence support the weight the ALJ afforded to the respective findings of both the treating and non-treating physicians. The ALJ's reliance on the opinion of Dr. Nielsen was proper based on *Chandler. See* Watts v. Colvin, 2013 WL 2481274, *6 (M.D. Pa. June 10, 2013) ("The ALJ's reliance on [the opinion of a state agency physician... was appropriate.") (citing Chandler, 667 F.3d at 362 ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]")). As in *Chandler*, the ALJ in the instant case gave greater weight to the opinion and RFC assessment of Dr. Nielsen and incorporated it into her RFC finding. Based on the above discussion, the ALJ properly explained why she afforded greater weight to the opinion of Dr. Nielsen than the opinions of Dr. Tuffaha and Dr. Olinsky.

### *C. ALJ's Finding that Plaintiff' did not meet a Listing*

Plaintiff finally argues that the ALJ did not fully develop the record since she did not have a medical expert determine if he met or equaled a listing. The ALJ found that plaintiff had severe physical impairments of post concussion syndrome as a result of a motor vehicle accident and obesity. The

ALJ did not find plaintiff had a severe mental impairment, including

depression. In finding that plaintiff did not have an impairment or combination

of impairments that met or equaled a listed impairment, the ALJ considered

Listings 11.18 (Cerebral trauma) and 12.02 (Organic Mental Disorders), and

found that plaintiff failed to meet the conditions set forth in these listings. (TR

14-15). The ALJ throughly discussed plaintiff's depression diagnosis and why

she found it to be "nonsevere." Specifically, the ALJ stated:

> Barbara Swartz, M.D., a treating physician from Susquehanna
> Health, diagnosed the claimant with depression and prescribed
> Lexapro and Topamax on April 22, 2011 (Ex. B28F at 6). The
> record as a whole, however, does not show that his depression
> has caused significant functional limitations in his ability to
> perform basic work activity. In fact, Dr. Swartz 's notes from April
> 22, 2011 suggest that the diagnosis was largely based on the
> claimant's own report of feeling depressed (Ex. B28F at 6). There
> is also no evidence that he sought therapy treatment for his
> depression. In the absence of medical opinion showing that the
> claimant has "severe" mental impairment, the undersigned gave
> great weight to the assessment of the State Agency's finding that
> the claimant has no restriction of activities of daily living, no
> difficulties in maintaining social functioning, mild difficulties in
> maintaining concentration, persistence, or pace, and no episode
> of extended decompensation (Ex. BI0F).
>
> Because the claimant's medically determinable mental
> impairments cause no more than "mild" limitation in any of the first
> three functional areas and "no" episodes of decompensation
> which have been of extended duration in the fourth area, they are
> nonsevere (20 CFR 416.920a(d)( 1)).

(TR14-15).

At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d at 119. The purpose of the listing of impairments is to describe those impairments which are "severe enough to prevent a person from doing any gainful activity," regardless of age, education, or work experience. 20 C.F.R. §416.925(a). As such, the Commissioner explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). If a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits. 20 C.F.R. §416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Zebley, 493 U.S. at 531 (emphasis original); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

As Judge Cohn explains, (Doc. 20, at 32-33), plaintiff has failed to meet

his burden to present medical findings that show his depression met Listing 12.04 or was equal in severity to this listing as required by Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). Also, as indicated above, the ALJ met her obligation to "fully develop the record and explain [her] findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Burnett, 220 F.3d at 120. Under these circumstances, Judge Cohn correctly concluded that no medical expert was required and that substantial evidence supported the ALJ's finding that plaintiff did not meet or equal a listing. (Doc. 20, at 33-34).


## IV.    CONCLUSION

Substantial evidence supported the ALJ's decision denying plaintiff's SSI claim.  Accordingly, the report and recommendation of Judge Cohn, (Doc. 20), is **ADOPTED IN FULL**. The final decision of the Commissioner is **AFFIRMED** and the plaintiff's appeal, (Doc. 1), is **DENIED**. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 31, 2015**